Black et al., Exrs., *v.* Hoffman et al., Appellants.

Argued March 23, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Quincy D. Hastings,* with him *Maurice P. Breene,* for
appellants.

*A. B. Jobson,* of *Breene & Jobson,* with him *G. G. Mar-
tin,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 10, 1933:

This appeal is a sequence of our decision in Black et al., Exrs., v. Hoffman et al., 309 Pa. 423, 164 A. 518. That appeal was from a decree taken pro confesso on a bill of discovery to produce for inspection a document, the integrity of which had been challenged by persons whose property interests would be prejudiced by that document's existence. The litigation instituted by the present appellants with the alleged-to-exist document as its foundation, is reviewed in our opinion in Cross's Est., 309 Pa. 418, 164 A. 516.

When we affirmed the decree in the case first mentioned, we said: "The court below has power, under Equity Rule No. 51, to open the final decree which it entered and to permit defendants below......to answer over, upon cause shown, and on such terms," etc.

The defendants on December 12, 1932, petitioned the court below "that the decree made and entered in this case on April 5, 1932, be opened and that this petition be allowed to stand as an answer." The kernel of the petition was the following: "The contract in question which is ordered to be impounded, was on and before the 24th day of June, 1931, in the home and dwelling of one of the petitioners, H. E. Hoffman; that on this day the home and dwelling of the said H. E. Hoffman was partially destroyed by fire; that since the fire your petitioners have been unable to find the said agreement or contract, and under the circumstances believe that the said contract was burned; that they have not seen it since; have no knowledge of others having seen it, and if not burned, your petitioners have no knowledge of where the said contract may be; that the petitioner, H. E. Hoffman, was not at home at the time of the fire in his dwelling and the neighbors entered and took from the dwelling furniture, papers and effects, while the fire was in progress. Your petitioners respectfully show that it is impossible for them to produce the contract or agreement and impound the same with the prothonotary

as they do not have it; do not know where it is and believe that it has been destroyed by fire."

In considering this petition to open the decree, the following facts are to be borne in mind: First, the appellants in their petition did not ask for a rule to show cause, offered no depositions in support of their petition, did not offer to take depositions and made no request to take any testimony by leave of court, although Rule No. 38 of the Court of Common Pleas of Venango County provides that in certain proceedings in court (naming them) including proceedings such as or at least analogous to the present proceedings, "testimony of witnesses, if necessary, shall be taken by deposition in writing, and no witnesses shall be examined at the bar, but by special order of the court."

Second, although the petition to open the decree sets forth allegations which the petitioners apparently hoped would constitute a persuasive invitation for the judicial inference that the challenged document which the opposing parties by their bill for discovery filed December 9, 1931, expressed great eagerness "to inspect, examine and investigate the signatures purported to be attached thereto," was actually destroyed by fire on June 24, 1931, these same petitioners when they filed in the Orphans' Court of Venango County, on November 5, 1931, a bill for the specific performance of the alleged contract which has now become a will-o'-the-wispish document of questioned integrity, were strangely silent as to its destruction by fire four months and twelve days previously. Not even the filing of the bill for discovery by the appellees on December 9, 1931, was sufficient to tempt the appellants to disclose the fact now alleged that the thing to be "discovered" had departed its physical existence several months before. Even when the appeal from the decree pro confesso on a bill for discovery for inspection of this now questioned contract was argued before this court on September 28, 1932, appellants

concealed from us the fact of the contract's pyrogenous demise fifteen months and four days previously.

Those who address, as did the appellants, their appeal for relief to the conscience of a chancellor should bear in mind two maxims which are time honored in courts of equity. One of these is: "He who seeks equity must do equity," and the other is: "He who comes into equity must come with clean hands." As to the first maxim: "It is undeniable that courts of equity do not recognize and protect the equitable rights of litigant parties unless such rights are in pursuance of the settled juridical notions of morality, based upon conscience and good faith": Pomeroy's Equity Jurisprudence 4th ed., volume 1, section 385. As to the second maxim quoted, "It says that whenever a party, who, as *actor* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy": Ibid., section 397, pages 737-738.

In the refusal of the court below to open the decree taken pro confesso, we find no abuse of the discretion vested in that court by the 51st Rule of Equity Practice.

The order is affirmed.